TODTENHAUSEN *v.* KNOX COUNTY *et al.**

(*Jackson.* April Term, 1915.)**

1. **STATUTES. Special legislation. Counties.**

Const. art. 11, sec. 8, inhibiting the suspension by the legislature of any general law for the benefit of any particular individual, does not prevent a special act for the benefit of a county, like Priv. Acts 1915, ch. 117, authorizing a county to issue and sell bonds for highways. (*Post, p.* 172.)

Cases cited and approved: Redistricting Cases, 111 Tenn., 287; State v. Wilson, 80 Tenn., 246; Ballentine v. Pulaski, 83 Tenn., 636; Williams v. Nashville, 89 Tenn., 487; Burnett v. Maloney, 97 Tenn., 697; Furnace Co. v. Railroad Co., 113 Tenn., 722; Fisher v. Wilson, Mem., Sept. Term, 1911.

Constitution cited and construed: Art. 11, sec. 8.

2. **EVIDENCE. Judicial notice. Legislative journals.**

Judicial notice of house and senate journals will be taken, not only before they are printed, but on demurrer to a bill alleging a statute was not passed conformably to the constitution. (*Post, p.* 173.)

Cases cited and approved: Webb v. Carter, 129 Tenn., 196; State v. Swiggart, 118 Tenn., 556; People v. Mahaney, 13 Mich., 492; Turner v. Hocker, 36 Fla., 362.

Code cited and construed: Sec. 5584 (S.).

Constitution cited and construed: Art. 2, sec. 21.

3. **STATUTES. Bills and subject. County roads.**

Priv. Acts 1915, ch. 117, sec. 23, in part fixing and defining the powers, duties, and responsibilities of the good roads commission, created by the act for Knox county, falls under, and is

---

*For cases passing upon judicial notice of existence and contents of legislative journals, see note in 40 L. R. A. (N. S.), 38.

**Note:  This cause was advanced for hearing in the Supreme Court and was determined at the April term, 1915, at Jackson, Tennessee, on the 3rd day of June, 1915, and the opinion filed with the Clerk of the Supreme Court at Knoxville, Tennessee, on June 5th, 1915.

expressed by, the part of the title, "To create a good roads commission for said county, and fix and define its powers, duties, and responsibilities," within Const. art. 2, sec. 17, requiring a statute to have only the subject which shall be expressed in the title. (*Post, p.* 175.)·

4. **STATUTES.   Certainty.  Road commissioners.**

There is no fatal uncertainty in Priv. Acts 1915, ch. 117, sec. 23, when considered with the rest of the act, as to when the good roads commission, created for Knox county, shall take control, and when the regular road commission shall resume control, it being clear the good roads commission is to take control of the roads it may elect to build or repair when the funds have been provided by sale of the bonds, and in its proper discretion the time has arrived for it to assume control, and that when its work is completed the regular road commission shall resume control. (*Post, p.* 175.)

5. **STATUTES.   Single subject.**

Within Const. art. 2, sec. 17, the subject of a statute is single when the statute has but one general object, or purpose, however many be the means provided for effecting it. (*Post, p.* 175.)

Cases cited and approved:   Railroad v. Byrne, 119 Tenn., 299; State v. Brown, 103 Tenn., 449; Morrell v. Fickle, 71 Tenn., 79; State v. Hamby, 114 Tenn., 364; Cannon v. Mathes, 55 Tenn., 504; Frazier v. R. R. Co., 88 Tenn., 157; Scott v. Marley, 124 Tenn., 398.

Constitution cited and construed:   Art. 2, sec. 17.

6. **HIGHWAYS.  "County officer."  Good roads commissioners.**

The members of the good roads commission created and named by Priv. Acts 1915, ch. 117, merely to superintend the expenditure of a bond issue on roads in Knox county, are not "county officers" within Const. art. 11, sec. 17, providing no county office created by the legislature shall be filled except by the people or the county court. (*Post, p.* 177.)

Cases cited and distinguished:   State v. Kenyon, 7 O., 562; Sheboygan v. Parker, 3 Wall., 93; Liebman v. San Francisco, 24 Fed.,

Todtenhausen v. Knox County.

719; Bunn v. People, 45 Ill., 408; State v. Lamantia, 33 La. Ann., 449; Lewis v. Jersey City, 51 N. J. Law, 242; Horton v. Thompson, 71 N. Y., 521; Attorney-General v. McCaughey, 21 R. I., 341.

Constitution cited and construed:  Art. 11, sec. 17.

7. HIGHWAYS.  Good roads commissioners.  Filling vacancies.

The provision of Priv. Acts 1915, ch. 117, that vacancies in the temporary good roads commission thereby created for Knox county shall be filled by the remaining commissioners is authorized by Const. art. 7, sec. 4, providing that the election of all officers, and the filling of vacancies not otherwise directed by the constitution shall be made in such manner as the legislature shall direct.   (Post, p. 178.)

Case cited and approved:  Condon v. Maloney, 108 Tenn., 83.

Constitution cited and construed:  Art. 7, sec. 4; Art. 11, sec. 17.

---

FROM KNOX.

---

Appeal from the Chancery Court of Knox County. Will D. Wright, Chancellor.

Noble Smithson, for appellant.

Shields & Cates and James G. Johnson, for appellees.

Mr. Justice Buchanan delivered the opinion of the Court.

This cause, for good and sufficient reasons to the court appearing, has been advanced and heard at our 1915 Jackson term, under the provisions of our statutes.

On May 1, 1915, August Todtenhausen, on behalf of himself and all other taxpayers of Knox county, filed

his original bill in this cause, seeking to restrain the sale of certain bonds issued by the county of Knox, under the authority of an act of the general assembly approved March 19, 1915, and being chapter 117, Senate Bill 386, Private Acts 59, general assembly of the State of Tennessee.

The above act is entitled:

"An act to authorize Knox county Tennessee, acting through its quarterly court, to issue and sell $500,000 of its five per cent interest bearing coupon bonds for the purpose of building and repairing pike roads and bridges in said county; to provide for the payment of interest on said bonds, to pay off and retire said bonds at maturity, and to provide a sinking fund for said purpose; to create a good roads commission for said county, and fix and define its powers, duties, and responsibilities; to provide for the safekeeping and disbursement of the proceeds of the sale of said bonds, and to repeal all laws in conflict with this act."

The defendants demurred to the bill, and the chancellor, on May 10, 1915, sustained the demurrer and dismissed the bill. Todtenhausen appealed to this court, and by his assignment of errors, the following questions are presented:

First. It is said the act violates article 11, section 8, of the constitution of Tennessee, in that the act is a special one for the benefit of Knox county, and that said article of the constitution withholds from the legislature powers to suspend any general law for the

benefit of any particular individual, etc.  There is no merit in this point.  It has long been settled in this State that article 11, section 8, does not withhold power from the legislature to pass laws empowering counties and municipalities to make contracts and to impose taxes for internal improvements, etc.  *Redistricting Cases,* 111 Tenn., 287, 80 S. W., 750; *State v. Wilson,* 12 Lea, 246; *Ballentine v. Pulaski,* 15 Lea, 636; *Williams v. Nashville,* 89 Tenn., 487, 15 S. W., 364; *Burnett v. Maloney,* 97 Tenn., 697, 37 S. W., 689, 34 L. R. A., 541; *Furnace Co. v. Railroad Co.,* 113 Tenn., 722, 87 S. W., 1016; *Fisher v. Wilson,* Mem., Sept. Term, 1911.  In respect of such benefits conferred by special laws on municipal corporations and counties, these governmental agencies are regarded as arms of the State government, and the benefits are considered as conferred on the public rather than on individuals.  *State v. Wilson,* supra.

Second.  It was averred in the bill of complaint, on information and belief, that the act in question was not passed in the manner required by section 18, article 2, of the constitution, and therefore that the act never became a law.  When such a question as this arises, whether upon demurrer or other form of pleading, the judicial knowledge of the court is brought into play, and the journals of the house and of the senate are looked to, and from them the question is determined by the court.  Therefore it is a mistake to suppose that the demurrer admitted the truth of the averment of the bill upon this point.  ''The demurrer does

not admit any matters of law suggested in the bill, or inferred from the facts stated; nor does it admit the arguments, the deductions, inferences, or conclusions set forth in the bill; nor does a demurrer admit allegations contrary to facts judicially known to the court. Upon the argument of a demurrer the bill alone must be looked to for the facts of the case except such facts as the court may judicially know.'' See Gibson's Suits in Chancery, section 304. In *Webb* v. *Carter,* 129 Tenn. (2 Thomp.), 196, 165 S. W., 426, we looked to the journals of the house and of the senate to determine whether a quorum was present, when, as was in that case insisted, an act was passed. See cases there cited, and see, also, article 2, section 21, constitution of Tennessee; section 5584, Shannon's Code; *State* v. *Swiggart,* 118 Tenn., 556, 102 S. W., 75; *People* v. *Mahaney,* 13 Mich., 492; *Turner* v. *Hocker,* 36 Fla., 362, 18 South., 767. There is no merit in the insistence that we may not look to the journals of the two houses, because they have not been published in printed form. If necessary, we might look to the original journals. The journals are required to be kept by article 2, section 21, of the constitution, and under section 5584, Shannon's Code, we may look to copies of the journals officially certified by the officer having custody of the originals, or the copies thereof purporting to have been printed by order of the legislature, or either branch thereof. We have before us copies certified as above, and from their recitals it is clear that the act here in question was passed in the manner required

Todtenhausen v. Knox County.

by the constitution. It, therefore, results that the second insistence is unsound.

Third. Section 23 of the act in question is as follows:

"Be it further enacted that said good roads commission is hereby given full authority, control and supervision of all such roads as it shall elect to build or repair while said road is being constructed or repaired, after which time the control and supervision of said road shall belong to the regular road commission of Knox county."

It is insisted that the legislation accomplished by section 23 above set out is not expressed in the title of the act, and violates that part of section 17, article 2, of the constitution which provides that:

"No bill shall become a law which embraces more than one subject, that subject to be expressed in the title."

One of the purposes of the act expressed in its title is as follows:

"To create a good roads commission for said county, and fix and define its powers, duties and responsibilities."

See the caption above copied. Manifestly section 23 of the act falls under, and is expressed by, the last above quoted part of the title, and section 23 in part fixes and defines the powers, duties, and responsibilities of the commission, so we think there is no merit in this point. But it is said that section 23 is void for uncertainty, because it fails to fix the time at which

the good roads commission shall take control and su-
pervision of the several roads which it may elect to
build or repair, and fails to fix the time when the reg-
ular road commission of Knox county shall resume
control and supervision of said roads, and creates
doubts and uncertainty as to the rights, duties, juris-
diction, and powers of the regular road commission and
of the good roads commission. It is to be remembered
that section 23 is not the entire act. There are 24 sec-
tions in the act, and, reading the entire act, it is clear
that its purpose is that the good roads commission
shall take control of the roads which it may elect to
build or repair when the funds have been provided by
sale of the bonds, and when in the proper discretion
of the commission the time has arrived for it to as-
sume control. It would have been unwise for the legis-
lature, by the act, to have fixed a specific date when
the good roads commission should take or relinquish
control of the roads, because it could not be known to
the legislature just when the funds resulting from
bond sales would be in hand, nor just how much time
would be consumed in the contemplated building and
repairing of the roads. There is, in our opinion, no
fatal uncertainty in section 23, nor in the entire act.
As we see the purpose of the act, it is that the regular
road commission of Knox county shall yield control
when the good roads commission sees proper to assume
control of the roads which the latter commission may
elect to build or repair, and when the work of the good
roads commission is completed, the regular road com-

mission of Knox county shall resume control of the roads. We think the purpose of the act in this respect is very clear. "When a statute has but one general object or purpose, the subject is single, however multitudinous may be the means or instrumentalities provided for effecting that purpose." *Railroad* v. *Byrne,* 119 Tenn., 299, 104 S. W., 460; *State* v. *Brown,* 103 Tenn., 449, 53 S. W., 727; *Morrell* v. *Fickle,* 3 Lea, 79; *State* v. *Hamby,* 114 Tenn., 364, 84 S. W., 622; *Cannon* v. *Mathes,* 8 Heisk., 504; *Frazier* v. *R. R. Co.,* 88 Tenn., 157, 12 S. W., 537; *Scott* v. *Marley,* 124 Tenn. (16 Cates), 398, 137 S. W. 492.

Fourth. It is next said that the act contravenes article 11, section 17, of the constitution which provides:

"No county office created by the legislature shall be filled otherwise than by the people or the county court."

This insistence rests upon the fact that by the tenth section of the act five persons are therein named as commissioners empowered to carry out its provisions, and by the eleventh section of the act it is provided:

"Should any vacancy occur in said commission by death, resignation, or removal, said vacancy shall be be filled by the remaining commissioners until the quarterly county court may fill such vacancy," etc. —and the point is made that the commissioners are county officers within the meaning of the above quoted provision of the constitution. The precise question here presented was ruled upon by us in *R. J. Fisher*

132 Tenn.12

*et al.* v. *W. P. Wilson et al.,* from the McMinn Equity Docket, in an opinion filed October 2, 1911, and the court, speaking through Mr. Justice Green, said:

"In reply to this contention we may observe that we do not regard these pike commissioners as county officers in the constitutional sense of the term. The duties of these commissioners are not permanent. The commission was instituted merely to superintend the expenditure of said issue upon certain named roads in McMinn county. These commissioners are not authorized to exercise any political or governmental county functions. Their employment is temporary, and for a single object. Many of the States have constitutional provisions as to the filling of county offices similar to ours, and this question has arisen in many other jurisdictions" (citing 19 Am. & Eng. Encyc. of Law [1 Ed.], pp. 382-390; *State* v. *Kenyon,* 7 O., 562; *Sheboygan* v. *Parker,* 3 Wall., 93, 18 L. Ed., 33; *Liebman* v. *San Francisco* (C. C.), 24 Fed., 719; *Bunn* v. *People,* 45 Ill., 408; *State* v. *Lamantia,* 33 La. Ann., 449; *Lewis* v. *Jersey City,* 51 N. J. Law, 242; 17 Atl., 112; *Horton* v. *Thompson,* 71 N. Y., 521; *Attorney-General* v. *McCaughey,* 21 R. I., 341, 43 Atl., 648).

See, note, 63 Am. St. Rep., 187.

So we hold that the commissioners named by the present act are not county officers within the meaning of the seventeenth section of article 11 of the constitution.

Fifth. It is said that the act also violates the last above section of the constitution, in that it

authorizes the commissioners to fill vacancies as above stated, but from what has been said it is manifest that this insistence cannot be sustained.    Granting to the legislature the power to create the board of commissioners, and to name its members, we think its power to authorize that board to fill temporary vacancies in the membership of the board must follow by analogy, for we find that section 4, art. 7, of the constitution provides that the election of all officers, and the filling of all vacancies not otherwise directed or provided by this constitution, shall be made in such manner as the the legislature shall direct.  *Condon* v. *Maloney,* 108 Tenn., 83, 65 S. W., 871.

Sixth.   It is next said, and finally, that the act violates article 11, section 17, of the constitution, in that the good roads commissioners are, by the act, appointed for life, but we failed to find any such provision in the act.   We have already indicated our views of the purpose of the act, as to the term of service of the commissioners.   Certainly, as we construe the act, it is not in contravention of article 11, section 17. There is nothing in the act, nor in its purpose, to indicate that the commissioners are appointed for life.

The decree of the chancellor was correct, and it is affirmed at appellant's cost.